IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

DONDE LINDSAY a/k/a Dundee,

Defendant.

24-MR-6105-FPG

---

## MOTION FOR EMERGENCY STAY AND FOR REVIEW OF A RELEASE ORDER

The United States, by and through its attorney, the United States Attorney for the Western District of New York, respectfully moves this Court, first, to stay the defendant's release pending trial, and second, to review the decision by the Magistrate Judge to deny the government's motion for pretrial detention.

### I.     BACKGROUND

On January 17, 2024, local and federal law enforcement executed over a dozen search warrants at locations in connection with the take-down of a wiretap investigation targeting the armed narcotics distribution organization run by defendant Timothy Jackson, Jr. Those locations included 135 Fifth Street (upper) in the City of Rochester, the residence of defendant Donde Lindsay, a mid-level cocaine distributor for the organization who has three prior felony convictions as part of his 30-year criminal history. The basis for the warrant at his residence included controlled purchases of cocaine from the defendant at the residence, wiretap calls of the defendant and Jackson in connection with those purchases, and surveillance of Jackson delivering cocaine to the defendant at 135 Fifth Street shortly before the defendant sold cocaine to the informant.

1

At the time of the SWAT entry for the search warrant at the defendant's residence, the defendant was taken into custody fleeing from the master bedroom. Behind the dresser propped up against the wall in that bedroom, there was a loaded 9mm handgun with a large capacity magazine and defaced serial number. The defendant's cell phone that he used to communicate with Jackson was also located in that bedroom. In the living room, there was mail in the defendant's name (including a cable bill addressed to him at 135 Fifth Street), as well as two digital scales. A female and five children (6, 9, 13, 17, and 19) were also in the residence. During the search, the defendant spontaneously stated repeatedly that anything the police found in the apartment belonged to him. After the search warrant was executed, the defendant made further post-Miranda admissions that he possessed the gun, that he had it for protection, and that he did not want to say where obtained it.

On January 22, 2024, in order to insure the defendant was not released from custody, the defendant, Timothy Jackson and seven other individuals were charged in federal court by a 95-page Criminal Complaint under Magistrate No. 24-MJ-4013 with Conspiracy to Possess with Intent to Distribute and to Distribute 5 Kilograms or more of Cocaine and 400 grams of more of Fentanyl), Possession of a Firearm as a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), and Possessing Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See* Dkt. #1. At the defendant's initial appearance that same day, the government moved to detain the defendant on both dangerousness as well as risk of flight.

After several adjournments requested by the defendant, U.S. Magistrate Judge Marian Payson conducted a detention hearing on March 19, 2024 and again with new

counsel on June 17, 2024. Magistrate Payson conducted additional proceedings related to the detention motion on June 21, 2024 and June 25, 2024.[1]

On June 25, 2024, Magistrate Payson, after indicating that it was a "close" case, acknowledging the seriousness of the charges, the evidence supporting those charges, the presumption that the defendant should be detained, and his very lengthy criminal history, stated that she was willing to release the defendant from custody to reside at the Salvation Army, largely because in 2018 the defendant successfully completed one of his multiple previous terms of his multiple terms of probation or parole. The Magistrate agreed to stay the release order until June 27, 2024 to allow the government time to seek review of that decision. The government seeks review of that release order here and asks this Court to stay the defendant's release pending a hearing on this appeal.

II.    **ARGUMENT**

    A.    **This Court has the authority to stay and review the release order.**

Title 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order** – If a person is ordered released by a magistrate judge, …
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* theMagistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed

---

[1] At the time of this filing, transcripts of the proceedings have been requested, but not received.

3

to rehear the evidence by recalling witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence
> . . . .

*See* S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.

Here, the United States seeks detention on three grounds: (1) pursuant to 18 U.S.C. § 3142(f)(1)(A) because the § 922(g)(1) and the § 924(c) charges are crimes of violence for which a maximum sentence is 10 years or more is prescribed; (2) pursuant to 18 U.S.C. § 3142(f)(1)(B) because the maximum sentence for the § 924(c) charge and the drug charge is life imprisonment; (3) pursuant to 18 U.S.C. § 3142(f)(1)(C) because the drug offense charged carries a maximum term of 10 years or more under the Controlled Substances Act (in fact, the *mandatory minimum* term of imprisonment is ten years, and the maximum is life); and (4) pursuant to 18 U.S.C. § 3142(f)(2)(A) in that the defendant presents a serious risk of flight.

**B.      The presumption in favor of detention applies under 18 U.S.C. § 3142(e)(3)(A).**

18 U.S.C. § 3142(e) dictates that:

> (3) Subject to rebuttal by the person, no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed--
>
> > (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .

As Judge Payson acknowledged, and is plainly evident by the detailed information set forth in the Criminal Complaint, there is probable cause to believe that the defendant committed both the firearms offenses and narcotics offenses alleged in the Criminal Complaint. *See* Dkt. #1, at pp. 86-92. Therefore, the presumption in favor of detention applies pursuant to 18 U.S.C. § 3142(e)(3)(A) and (B).

**C.      The factors under 18 U.S.C. § 3142(g) weigh in favor of detention.**

In determining whether there are any conditions or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of any person in the community, the Court considers the following factors: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

> *i.   The Nature and Circumstances of the Charged Offenses*

The nature and circumstances of the charged offenses support detention. The

5

defendant is a three-time felon for drug trafficking and illegal firearm possession who, at 50 years old, is still selling cocaine (31-gram and 62-gram quantities) from his armed residence as part of his participation in the armed cocaine trafficking operation run by Timothy Jackson. The offenses involve firearms, controlled substances, and the firearms charges are both crimes of violence. The charges the defendant faces are plainly serious. The charges carry a maximum possible term of imprisonment of life upon conviction, as well as a mandatory minimum sentence of 15 years imprisonment.

### ii. *The Weight of the Evidence Against the Defendant*

The weight of the evidence is very strong and weighs in favor of detention. *See* Dkt. #1, at pp. 87-92. There are wiretapped conversations between the defendant and Timothy Jackson and recorded conversations arranging sales of cocaine between the defendant and a confidential informant. There is search warrant evidence, which includes a loaded, defaced, 9mm handgun with a large capacity magazine in the defendant's bedroom he was running from, his phone, two digital scales, and mail connecting the defendant to the location, and the cell phone that he utilized to speak to Jackson to order cocaine and to arrange the sale of cocaine to the informant. The search warrant evidence also includes evidence obtained during the search of Jackson's residence on the same day – specifically, law enforcement buy money (identified by serial numbers on the bills) that was used in two separate informant purchases of cocaine from the defendant at his residence was found at Jackson's residence, further demonstrating their co-conspiratorial relationship. Finally, the defendant admitted possession of the firearm, and that he had it for protection.[2] Accordingly, based on the

---

[2] In an attempt to argue against the § 924(c) charge, defendant points out that the loaded handgun was found on the floor behind a dresser, and that it was "inoperable" as recovered. Of course, as the Court is well aware, operability is not an element of either of the charged firearms offenses.

informant purchases of cocaine, the surveillance, and the wiretapped conversations between the defendant and Jackson, the recorded conversations with the informant, the search warrant evidence (at both defendant's residence and Jackson's residence), and the admissions by the defendant, the weight of the evidence is strong, and supports detention of the defendant.

### iii. The History and Characteristics of the Defendant

The defendant is a life-long resident of Rochester; indeed, he has been a life-long criminal committing crimes in this city for over 30 years. Since his first arrest in 1990, he has been given the benefit of two Youthful Offender adjudications, including a misdemeanor YO stemming from a Robbery and Assault, and a felony YO stemming from illegal firearm possession. The felony YO in place of his guilty plea to Criminal Possession of a Firearm in the Third Degree (loaded firearm) satisfied a felony drug arrest that was committed while the firearms charges were pending. Both of those probation sentences were revoked. These breaks did not deter the defendant's return to illegal drug and firearms possession. Less than a year after his release from jail on his YO felony from illegal firearms possession, he was arrested and charged with narcotics and firearms felonies. He was ultimately convicted of the firearms felony and sentenced to jail. The following year, he was arrested on felony narcotics charges and pled guilty the next year (1997) to his first adult felony conviction – Criminal Possession of a Controlled Substance in the Fourth Degree, for which he was sentenced to 3 to 6 years in state prison. After being granted early release to parole, he was

---

Moreover, the loaded handgun successfully discharged after the firing pin was lubricated. It is not a partial firearm, or missing pieces, or broken. Rather, it was a completely assembled, 9mm semi-automatic handgun loaded with six (6) rounds of live ammunition housing a 17-round large capacity magazine. Finally, there is no evidence that the defendant felt that the condition of the firearm rendered it any less useful for his protection – the stated purpose for his possession of it.

arrested on felony stolen property charges that were reduced to a misdemeanor and given a 90-day jail sentence.

In 2000, after being released again to parole on his state felony drug conviction, he was arrested with another firearm and charged in federal court with being a felon in possession of a firearm and an unregistered NFA weapon. In 2001, he pled guilty to being a felon in possession of a firearm and was sentenced to $33^3$ months in federal prison to be followed by three years supervised release with conditions to include a curfew for the first six months.

In November 2003, the defendant's supervised release began. The defendant did not make it six months without requiring a modification of his supervision to include to electronic monitoring. Within six months, another modification was required due to the defendant's marijuana possession and use, failure to maintain a job, and failure to make any fine payments. Within a year, the defendant had violated his supervision by failing to report and he was continued on supervision with the sanction being four months at the Volunteers of America Community Confinement Center to be followed by four months of home confinement to be electronically monitored. Within six weeks, the defendant was kicked out of the Volunteers of America for violating the rules related to possession of alcohol. Within about nine months, and after repeatedly failing to follow his probation officer's instructions, a warrant was issued for the defendant's arrest on a violation of supervised release.

On January 25, 2006, while he had an outstanding warrant for a pending supervised release violation, the defendant was arrested during the execution of a narcotics search

---

[3] The bail report incorrectly lists this sentence as 22 months imprisonment.

warrant at 25 Fifth Street, one block from where he was selling drugs in January 2024. During the search warrant, the defendant and sole occupant of 25 Fifth Street was spotted looking outside the bathroom window just prior to police entry, which was delayed because the apartment was heavily fortified. The defendant was taken into custody in the kitchen, and told police he was Michael Maddox because he had a federal probation warrant out for him. Police found a beaker with white residue, new/unused packaging material, a plate with razor and baking soda in plain view on the kitchen table. In the bathroom (where the defendant spotted the police upon attempting to make entry), they found a digital scale floating in the running bathroom toilet that also appeared to have cocaine in the water), and the defendant's cell phone on the bathroom sink. The defendant had one bag of cocaine and keys to the location in his pocket. He was charged in federal court with multiple violations of supervised release, and in state court with felony narcotics possession and tampering with physical evidence. On March 30, 2006, the defendant pled guilty to violating his supervised release and was sentenced to an additional 20 months imprisonment. This time, no term of supervision was imposed. On the state case, the defendant pled guilty to misdemeanor possession charge and was sentenced to 90 days jail concurrent to his federal prison sentence.

On June 22, 2007, the defendant was released from federal prison. On November 30, 2007, just four months later, he was arrested on new felony drug charges, after a street stop in which he had 23 bags of crack cocaine and $310 in his pocket.

On February 25, 2008, just three months later (and while he had a felony drug case pending), he was arrested again on new felony drug charges. In May 2008, he pled guilty to a misdemeanor drug charge and was sentenced to six months jail for the 2007 drug case, and pled guilty to another misdemeanor and was sentenced to 1 year jail for the 2008 drug case.

On October 19, 2011, RPD was called to 192 Bay Street (upstairs apartment) for a report of family trouble. Upon arrival at 192 Bay Street, officers were directed by the downstairs occupants to go upstairs, where they had heard a female screaming "get off of me!" and heard items being knocked over. Upstairs, officers found Kenisha Newsome, crying, hysterical, terrified and bruised. Newsome told police the defendant choked her and told her he was going to kill her. She kept stating to police, "I thought he was going to kill me!" A young boy and girl were also present in the apartment and during the incident.

On August 21, 2012, less than a year later, at the same location (192 Bay Street (upstairs apartment), RPD SIS executed a narcotics search warrant at the location. Upon entry, the defendant was coming out of the bathroom, where police found cocaine in plain view on a plate on a chair, and on the floor. On the kitchen table in plain view, police found crack cocaine in a bowl, new/unused bags for packaging cocaine for sale, baking soda, a cell phone, and mail in the defendant's name. On the top of a kitchen cabinet, police found another scale and new/unused bags for packaging cocaine. The defendant had $632 and keys to the location in his pocket. The defendant pled guilty to a misdemeanor and was sentenced to probation that ended in 2018.

The defendant has not been employed for 8 years, has a long history of substance abuse issues, is a daily marijuana user, has required arrest and bench warrants to be returned to court, and lied to the police to conceal his identity when he had an outstanding warrant.

In short, the defendant's history and characteristics reflect a life-long criminal who continues to be involved in selling drugs and arming himself with loaded handguns. As such, his history and characteristics support detention.

        *iv.*       *The Nature and Seriousness of the Danger to Any Person*

The Second Circuit has recognized that drug dealing poses a danger to the community. It is well established in the Second Circuit that the Bail Reform Act's concept of dangerousness covers "the danger that the defendant might engage in criminal activity to the detriment of the community," United States v. Millan, 4 F.3d 1038, 1048 (quoting legislative history), including "the harm to society caused by narcotics trafficking," *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). Here, the defendant was utilizing his residence where children lived to sell ounces of cocaine. Without employment for the last 8 years, it is evident that he has been making his living by selling cocaine and, as such, there is a strong likelihood that he "would return to drug trafficking activity if released." *United States v. Trammel*, 922 F. Supp. 527, 532 (N.D. Okla. 1995). He possessed a loaded handgun in the residence to arm himself, despite the presence of these children. The risk of danger to those children, the community, as well as the harm to society, is substantial.

This drug dealing defendant's possession of a firearm presents a substantial danger, even in the absence of proof that the defendant fired the gun, or brandished it during a drug sale, or that it was found next to a pile of cocaine. The Second Circuit has recognized that specific use of a firearm is not necessary to present a danger – this felon's mere possession presents a danger based on the risk of violence. *See, e.g., United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant….The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by convicted felons."").

11

## III. <u>CONCLUSION</u>

No conditions or combination of conditions exist which could reasonably assure the defendant does not pose danger to the community or a risk of flight. The stiff penalties the defendant faces, as well as the strength of the evidence, buttress the statutory presumption that no condition or combination of conditions could reasonably ensure the defendant's presence at trial. "When evidence of a defendant's guilt is strong and the sentence of imprisonment upon conviction is likely to be long, as is true in this case, a defendant has stronger motives to flee." *United States v. Iverson*, 2014 WL 5819815 (W.D.N.Y. 2014). Additionally, no conditions or combination of conditions exist which could reasonably assure the defendant does not pose a risk of danger to the community as an armed multi-cocaine dealer.

For the reasons stated herein, the United States respectfully requests that the Court review the Magistrate Judge's decision to release the defendant. The United States respectfully requests that the Court stay the release order and schedule a hearing for such review, and order instead that the defendant be held without bond pending trial.

TRINI E. ROSS
United States Attorney

By: *s/Robert A. Marangola*
ROBERT A. MARANGOLA
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
500 Federal Building
100 State Street
Rochester, New York 14614
(585) 399-3980
Robert.Marangola@usdoj.gov